Good morning, your honors. Ina Lipkin on behalf of the petitioner. The petitioner contends that the IJ and the board erred in failing to find that his testimony in support of his claim for asylum was indeed consistent and credible, sufficient to establish past persecution based on an imputed political opinion and his Sikh religion. Substantial evidence does not support the board's affirmance of the IJ's adverse credibility finding. It is clear from the record that the IJ based her adverse credibility finding on either minor inconsistencies that did not go to the heart of the claim, and this is a pre-Real ID Act case, or on her own misrepresentations or misunderstanding of the IJ's adverse credibility finding. For example, she found that the petitioner testified inconsistently regarding the dates of the establishment of the Sikh religion, and also the establishment of the Akali Dal Maan Party, which he testified that he supported. However, the record clearly states he testified the Sikh religion did begin in the year 1699, which is in fact accurate, and that the Akali Dal Maan branch of the Akali Dal Party was established in 1989, also a correct date. There was significant problems with the interpretation, so much so that the IJ seemed to have forgotten that this problem occurred, and instead recalled only some other dates that the petitioner had given, such as the date 1998, but upon close reading of the record, which was already described in the petitioner's opening brief. There was some misunderstanding between the interpreter and himself regarding the year 1998 versus 89. We don't know whether the interpreter just didn't understand what he said, whether there's some nuance in numbers between the Hindi and Punjabi languages perhaps there was an error. We don't know. But because we don't know, the IJ should not have then relied on speculation to find an adverse credibility finding on this issue. The IJ in this case was quite, well, found this to be frivolous, actually, and wouldn't even grant a voluntary departure, which is quite unusual. What was the basis, do you think, for the IJ's hostility toward your client? I agree. The record, just the cold record reading it, you could tell that there's something there. The IJ has some strong feelings. I think I was there for the individual hearing. I think that there was a deep concern on her part regarding the medical evidence. There were two letters. Concerning what? The medical evidence in Exhibit 4, I think pages 10 and 11 and 12. The petitioner had submitted two items to corroborate his medical treatment. One was a prescription. One was sort of a record recapping what the injuries were in treatment given. I think the problem here was that the prescription predated the injury. I believe the date on the prescription was June 15, 2002, whereas the arrest was June 30, 2002. However, the petitioner credibly testified. He obtained that letter only after asking for it to be produced while he was here in the United States. Obviously, it's a typographical error. He didn't have to submit this document to the court. He saw that it had that error. He produced the best evidence he could. He wanted to corroborate the fact that he did receive medical treatment following severe abuse at the hands of the Indian police. He testified that he obtained the doctor's note when he left the clinic and that he had it in India, but the note was dated 2005. Right. And what happened was the government attorney asked him about that. And he corrected himself. He just misspoke and realized, no, I actually asked for that letter from here. Then in closing argument, the government attorney made a big deal about this issue, indicating to the judge, there's no way that someone who has had such serious problems would have made such a mistake. But the government attorney himself, on the very next page, I think it was 194, misstates the date of the petitioner's arrival to the United States. So it's okay for him to misstate a date and a fact, but it's not okay for the petitioner. In the course of proceedings, under the pressure and tension that a petitioner would experience, his life is on the line. It is reasonable that he would make a small mistake, misunderstanding what was asked of him. And then when confronted, he realized, yes, of course, I obtained it from here and I asked for it. So it should be all right for the petitioner to make a mistake if the government attorney makes a mistake. And clearly, he explained the mistake. And his explanation was credible. Thank you, Cathy. Good morning, Your Honors. May it please the Court, my name is Ali Manoucheri on behalf of the Respondent, United States Attorney General Eric H. Holder, Jr. Your Honors, the record does not compel the conclusion that the agency erred in making an adverse credibility determination against Mr. Kapoor as to whether he was persecuted by local Indian authorities for his adherence to Sikhism and alleged support of the Akali Dalman organization in its attempt to create an independent Khalistan state. This Court has held that a single inconsistency identified by the agency that goes to the heart of an asylum applicant's persecution claim constitutes substantial evidence that is sufficient to uphold an adverse credibility determination. Here, Mr. Kapoor's testimony about the treatment he received from Dr. Sehgal after his second arrest on June 30, 2002, vastly differed with his documentary evidence. Mr. Kapoor testified that he left Dr. Sehgal's clinic with a treatment letter stating his injuries and an accompanying prescription note around July 2, 2002. In fact, on direct examination, Mr. Kapoor confirmed that these documents were both made for the first time in 2002 when he was treated by Dr. Sehgal and that he saw them when he was still in India. The treatment letter, however, was dated on June 10, 2005, nearly three years after Mr. Kapoor's second arrest. Likewise, Dr. Sehgal's prescription note was dated on June 15, 2002, 15 days before Mr. Kapoor was ever arrested and saw treatment from Dr. Sehgal for his alleged injuries. Both these documents undermine whether Mr. Kapoor was treated by Dr. Sehgal for the injuries he allegedly sustained after his second arrest. Additionally, Mr. Kapoor's cross-examination testimony about the alleged injuries he suffered after his second arrest were not the types of injuries he was treated for by Dr. Sehgal. Mr. Kapoor stated that he was beaten and sustained facial injuries to his eye and nose, but Dr. Sehgal's treatment letter only refers to the soft tissue injuries to Mr. Kapoor's back and legs. These inconsistencies call into question whether Mr. Kapoor was beaten, let alone arrested, on June 30, 2002, because he is providing different versions of the types of injuries he was being treated for by Dr. Sehgal. Lastly, the immigration judge correctly questioned whether Mr. Kapoor was trying to pass himself off as a Sikh. On the first page of his asylum application, which he confirmed contained truthful information, Mr. Kapoor listed Punjabi as his native language and that he does not speak any other languages fluently. However, Mr. Kapoor testified throughout his removal hearing in Hindi and demonstrated a working knowledge of English. Also, Mr. Kapoor and his wife, who he claims is a Sikh, were married under the Hindu Marriage Act. Further adding to the immigration judge's skepticism of whether Mr. Kapoor is a Sikh is the information in Mr. Kapoor's youngest daughter's birth certificate about her religion, which appears to denote that at birth she is a Hindu. Any one of these specific urgent reasons identified by the immigration judge that questions the truthfulness of Mr. Kapoor's affiliation with Sikhism and the alleged mistreatment he suffered by the local Indian police for being a suspected supporter of the Akali Dalman organization constitute substantial evidence that is sufficient to uphold the adverse credibility determination. Therefore, because the adverse credibility determination is supported by substantial evidence, this Court should uphold the agency's decision and deny the petition for review. Did the IJ make a finding that he was not a Sikh? The IJ, towards the back of the decision, voiced concern, Your Honor, that Mr. Kapoor might not be a Sikh. So, yes. So, no, he didn't make a finding that he was not a Sikh. He voiced concern that he might not. Well, that was... I mean, I'm just taking what you said as an answer. And if you had to put a yes or no in front of the statement, the answer would be no. Well, this was just another part of the IJ's decision, Your Honor, that went to the credibility of Mr. Kapoor. I understand what it is. But if you could answer Judge Fletcher's question, yes or no, the question is, did he make a finding that he was not a Sikh? No. The IJ, towards the end... Can you say yes or no to that? Or I can't say yes or no? That statement was brought up in the revision. I don't understand. I said can you say yes or no, or I cannot say yes or no. I cannot say yes or no, Your Honor. Therefore, because the adverse credibility determination is supported by substantial evidence, this Court should uphold the agency's decision in denying Mr. Kapoor's petition for review. If there are no further questions, the government respectfully rests. Thank you. Thank you. Your Honors, I just want to lightly touch upon the issue of his religion. First of all, there's no such thing as a Sikh marriage act in India if you want to get married. It is only under the Hindu Marriage Act, no matter what your religion is. So that is really not dispositive. In regards to the medical treatment that the petitioner had received and any alleged omissions in his testimony, this Court has repeatedly found that omissions in an applicant's testimony, as compared to details in, say, a medical letter, exactly the facts that we have here, is not a sufficient basis to form an adverse credibility finding. Furthermore, the IJ and the government attorney didn't really question him about that. The record clearly shows that he gave some testimony regarding certain injuries that he had, but was not pressed by the IJ to give more details. Had he been pressed for more details, he certainly would have given them. Thank you, counsel. Thank you. Have a nice day. The case is there. It will be submitted.
judges: B. Fletcher, Reinhardt, Tashima